Anne LeJeune (Texas Bar No. 24054286)
alejeune@ftc.gov; (214) 979-9371
Jason Moon (Texas Bar No. 24001188)
jmoon@ftc.gov; (214) 979-9378;
Tammy Chung (New York Bar No. 5745476)
tchung@ftc.gov; (214) 979-9399;
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 72501
Fax: (214) 953-3079

Matthew H. Fine (Cal. Bar No. 300808)
(Local Counsel)
mfine@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380

Attorneys for Plaintiff
Federal Trade Commission

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

                Plaintiff,

    v.

XPONENTIAL FITNESS, INC.,
a corporation;

XPONENTIAL FITNESS LLC,
a limited liability company;

XPOF ASSETCO, LLC,
a limited liability company;

Case No. 8:26-CV-00610

**STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF**

1

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

AKT FRANCHISE, LLC,
a limited liability company;

AKT FRANCHISE SPV, LLC,
a limited liability company;

CYCLEBAR FRANCHISING, LLC,
a limited liability company;

CYCLEBAR FRANCHISING SPV, LLC,
a limited liability company;

PB FRANCHISING, LLC,
a limited liability company;

PB FRANCHISING SPV, LLC,
a limited liability company;

YOGA SIX FRANCHISE, LLC,
a limited liability company; and

YOGA SIX FRANCHISE SPV, LLC,
a limited liability company,

                        Defendants.

      Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction, Monetary Judgment, and Other Relief ("Complaint"), for a permanent injunction, monetary relief, and other relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act, 15 U.S.C. §§ 53(b) & 57b. The Commission and Defendants stipulate to the entry of the Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them:

2

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.    This Court has jurisdiction over this matter.

2.    The Complaint charges that Defendants participated in unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and of the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," as amended (the "Franchise Rule"), 16 C.F.R. Part 436, in the sale and marketing of franchises.

3.    Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.    Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.    Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.    "**Defendants**" means all of the Defendants, individually, collectively, or in any combination, including: Xponential Fitness, Inc., Xponential Fitness LLC, XPOF Assetco, LLC, AKT Franchise, LLC, AKT Franchise SPV, LLC, Cyclebar Franchising, LLC, Cyclebar Franchising SPV, LLC, PB Franchising, LLC, PB Franchising SPV, LLC, Yoga Six Franchise, LLC, and Yoga Six Franchise SPV, LLC, and their successors and assigns.

B.    "**Franchise Rule**" means the FTC Trade Regulation Rule codified at 16 C.F.R. Part 436, attached hereto as Attachment A.

3

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

C.    "**Action,**" as defined in 16 C.F.R. § 436.1(a), includes complaints, cross claims, counterclaims, and third-party complaints in a judicial action or proceeding, and their equivalents in an administrative action or arbitration.

D.    "**Held Liable**," as defined in 16 C.F.R. § 436.5(c)(1)(iii)(B), means that, as a result of claims or counterclaims, the person must pay money or other consideration, must reduce an indebtedness by an amount of an award, cannot enforce its rights, or must take action adverse to its interests.

## ORDER

## I.    PROHIBITION AGAINST MISREPRESENTATIONS

IT IS ORDERED that Defendants and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any franchise or any good or service to a franchisee or prospective franchisee, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including:

A.    The name and position of the franchisor's directors, trustees, general partners, principal officers, and any other individuals who will have management responsibility relating to the sale or operation of the franchises, as well as their principal positions and employers during the past five years, along with the starting date, ending date, and location for each position;

B.    Whether the franchisor, a predecessor, a parent or affiliate who induces franchise sales by promising to back the franchisor financially or otherwise guarantees the franchisor's performance, or the franchisor's directors, trustees, general partners, principal officers, and any other individuals who will have management responsibility relating to the sale or operation of the franchise:

1.    has pending against that person: (a) an administrative, criminal

4

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

or material civil Action alleging a violation of a franchise, antitrust, or securities law, or alleging fraud, unfair or deceptive practices, or comparable allegations; (b) civil Actions, other than ordinary routine litigation incidental to the business, which are material in the context of the number of franchisees and the size, nature, or financial condition of the franchise system or its business operation;

2.      was a party to any material civil Action involving the franchise relationship in the last fiscal year; and

3.      has, in the 10-year period immediately before the disclosure document's issuance date, been Held Liable in a civil Action involving an alleged violation of a franchise, antitrust, or securities law, or involving allegations of fraud, unfair or deceptive practices, or comparable allegations, or been convicted of or pleaded nolo contendere to a felony charge.

C.      Whether any officer or person with management responsibility relating to the sale or operation of the franchise has, during the preceding 10-year period, (1) filed a petition as a debtor under the United State Bankruptcy Code, or (2) obtained a discharge of debts under the Bankruptcy Code;

D.      The typical length of time between the earlier of the signing of the franchise agreement or the first payment of consideration for the franchise and the opening of the franchisee's business;

E.      The number or identity of current franchisees or of franchisees who had an outlet terminated, cancelled, not renewed or otherwise voluntarily or involuntarily ceased to do business under the franchise agreement during the most recently completed fiscal year;

F.      The contact information for current franchisees or for franchisees who had an outlet terminated, cancelled, not renewed or otherwise voluntarily or

5

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

involuntarily ceased to do business under the franchise agreement during the most recently completed fiscal year; or

G.     Any other fact material to franchisees or prospective franchisees.

## II.     COMPLIANCE WITH THE FRANCHISE RULE

IT IS FURTHER ORDERED that Defendants and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any franchise, are permanently restrained and enjoined from violating, or assisting others in violating, any provision of the Franchise Rule, including, but not limited to, failing to provide each prospective franchisee with a complete and accurate disclosure document as prescribed by the Franchise Rule.

## III.     MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.     Judgment in the amount of Seventeen Million Dollars ($17,000,000) is entered in favor of the Commission against Defendants, jointly and severally, as monetary relief.

B.     Defendants are ordered to pay to the Commission Seventeen Million Dollars ($17,000,000) as monetary relief, as follows:

1.  Defendants are ordered to pay to the Commission Five Million Dollars ($5,000,000) within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

2.  Defendants are ordered to pay to the Commission an additional Four Million Dollars ($4,000,000) within 4 months of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

3. Defendants are ordered to pay to the Commission an additional Four Million Dollars ($4,000,000) within 8 months of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

4. Defendants are ordered to pay to the Commission an additional Four Million Dollars ($4,000,000) within 12 months of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

5. If Defendants fail to make any required payment when due under Subsections III.B.1-4, the judgment becomes immediately due as to Defendants in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order. Time is of the essence for the payments specified in Subsections III.B.1-4.

## IV.    ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.    The facts alleged in the Complaint establish all elements necessary to

7

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.     Each Defendant acknowledges that Defendant's Employer Identification Number, Social Security Number, or other Taxpayer Identification Number ("TIN"), including all TINs that Defendants previously provided, may be used by the Commission for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in accordance with 31 U.S.C. § 7701.

E.     All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## V.     FRANCHISEE INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from, directly or indirectly, failing to provide sufficient franchisee information to enable the Commission to efficiently administer redress.  If a representative of the Commission requests in writing any information related to

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

redress, Defendants must provide it, in the form prescribed by the Commission, within 30 days.

## VI.    ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 5 years after entry of this Order, each Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VII.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.    One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.  Each Defendant must:

1.    identify the primary physical, postal, and email address and telephone number, as designated points of contact, which

9

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

representatives of the Commission may use to communicate with Defendant;

2.      identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

3.      describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant;

4.      describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

5.      provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      any designated point of contact; or

2.      the structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be

10

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: *FTC v. Xponential Fitness, Inc., et al.*

## VIII.  RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, each Defendant, in connection with the sale and operation of franchises, must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services, including franchises, sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all franchisee complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

E.    A copy of each unique advertisement or other marketing material used

11

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

in connection with the sale of franchises, whether directly or indirectly, such as through a third party; and

F.    Each Franchise Disclosure Document.

## IX. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

## X. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

Date: 3/18/26

Anne LeJeune
Jason Moon
Tammy Chung
Attorneys
Federal Trade Commission, Southwest Region
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
(214) 979-9371 (LeJeune)
(214) 979-9378 (Moon)
(214) 979-9399 (Chung)
alejeune@ftc.gov
jmoon@ftc.gov
tchung@ftc.gov

Matthew H. Fine
(Local Counsel)
mfine@ftc.gov; (310) 824-4300
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Fax: (310) 824-4380

13

STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF

**FOR DEFENDANTS:**

_____     Date: __March 6, 2026__

Svetlana Gans
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
SGans@gibsondunn.com

Diana Feinstein
Debra Wong Yang
Gibson, Dunn & Crutcher LLP
2000 Avenue of the Stars, Suite 1200N
Los Angeles, California 90067-4700
(310) 552-8500
DFeinstein@gibsondunn.com
DWongYang@gibsondunn.com

*Counsel for Xponential Fitness, Inc., Xponential Fitness LLC, XPOF Assetco, LLC, AKT Franchise, LLC, AKT Franchise SPV, LLC, Cyclebar Franchising, LLC, Cyclebar Franchising SPV, LLC, PB Franchising, LLC, PB Franchising SPV, LLC Yoga Six Franchise, LLC, and Yoga Six Franchise SPV, LLC.*

14

STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY
JUDGMENT, AND OTHER RELIEF

**DEFENDANT: XPONENTIAL FITNESS, INC.**

_____    Date: March 6, 2026

Gavin O'Connor,
Chief Legal and Administrative Officer of Xponential Fitness, Inc.


**DEFENDANT: XPONENTIAL FITNESS LLC**

_____    Date: March 6, 2026

Gavin O'Connor,
Chief Legal and Administrative Officer of Xponential Fitness LLC


**DEFENDANT: XPOF ASSETCO, LLC**

_____    Date: March 6, 2026

Gavin O'Connor,
Chief Legal and Administrative Officer of XPOF Assetco, LLC


**DEFENDANT: AKT FRANCHISE, LLC**

_____    Date: March 6, 2026

Gavin O'Connor,
Chief Legal and Administrative Officer of AKT Franchise, LLC


**DEFENDANT: AKT FRANCHISE SPV, LLC**

_____    Date: March 6, 2026

Gavin O'Connor,
Chief Legal and Administrative Officer of AKT Franchise SPV, LLC


**DEFENDANT: CYCLEBAR FRANCHISING, LLC**

_____    Date: March 6, 2026

Gavin O'Connor,
Chief Legal and Administrative Officer of Cyclebar Franchising, LLC

15

STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY
JUDGMENT, AND OTHER RELIEF

**DEFENDANT: CYCLEBAR FRANCHISING SPV, LLC**

_____    Date: ___March 6, 2026___

Gavin O'Connor,
Chief Legal and Administrative Officer of Cyclebar Franchising SPV, LLC


**DEFENDANT: PB FRANCHISING, LLC**

_____    Date: ___March 6, 2026___

Gavin O'Connor,
Chief Legal and Administrative Officer of PB Franchising, LLC


**DEFENDANT: PB FRANCHISING SPV, LLC**

_____    Date: ___March 6, 2026___

Gavin O'Connor,
Chief Legal and Administrative Officer of PB Franchising SPV, LLC


**DEFENDANT: YOGA SIX FRANCHISE, LLC**

_____    Date: ___March 6, 2026___

Gavin O'Connor,
Chief Legal and Administrative Officer of Yoga Six Franchise, LLC


**DEFENDANT: YOGA SIX FRANCHISE SPV, LLC**

_____    Date: ___March 6, 2026___

Gavin O'Connor,
Chief Legal and Administrative Officer of Yoga Six Franchise SPV, LLC

16

STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY
JUDGMENT, AND OTHER RELIEF

# ATTACHMENT A

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 18 of 65    Page ID #:56

This content is from the eCFR and is authoritative but unofficial.

## Title 16 —Commercial Practices
## Chapter I —Federal Trade Commission
## Subchapter D —Trade Regulation Rules

**Part 436**  Disclosure Requirements and Prohibitions Concerning Franchising

**Subpart A**  Definitions

§ 436.1  Definitions.

**Subpart B**  Franchisors' Obligations

§ 436.2  Obligation to furnish documents.

**Subpart C**  Contents of a Disclosure Document

§ 436.3  Cover page.

§ 436.4  Table of contents.

§ 436.5  Disclosure items.

**Subpart D**  Instructions

§ 436.6  Instructions for preparing disclosure documents.

§ 436.7  Instructions for updating disclosures.

**Subpart E**  Exemptions

§ 436.8  Exemptions.

**Subpart F**  Prohibitions

§ 436.9  Additional prohibitions.

**Subpart G**  Other Provisions

§ 436.10  Other laws and rules.

§ 436.11  Severability.

**Appendix A to Part 436**

Sample Item 10 Table—Summary of Financing Offered

**Appendix B to Part 436**

Sample Item 20(1) Table—Systemwide Outlet Summary

**Appendix C to Part 436**

Sample Item 20(2) Table—Transfers of Franchised Outlets

**Appendix D to Part 436**

Sample Item 20(3) Table—Status of Franchise Outlets

**Appendix E to Part 436**

Sample Item 20(4) Table—Status of Company-Owned Outlets

**Appendix F to Part 436**

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 19 of 65    Page ID #:57

Sample Item 20(5) Table—Projected New Franchised Outlets

# PART 436—DISCLOSURE REQUIREMENTS AND PROHIBITIONS CONCERNING FRANCHISING

**Authority:** 15 U.S.C. 41-58.

**Source:** 72 FR 15544, Mar. 30, 2007, unless otherwise noted.

## Subpart A—Definitions

### § 436.1 Definitions.

Unless stated otherwise, the following definitions apply throughout part 436:

(a) *Action* includes complaints, cross claims, counterclaims, and third-party complaints in a judicial action or proceeding, and their equivalents in an administrative action or arbitration.

(b) *Affiliate* means an entity controlled by, controlling, or under common control with, another entity.

(c) *Confidentiality clause* means any contract, order, or settlement provision that directly or indirectly restricts a current or former franchisee from discussing his or her personal experience as a franchisee in the franchisor's system with any prospective franchisee. It does not include clauses that protect franchisor's trademarks or other proprietary information.

(d) *Disclose* , *state*, *describe*, and *list* each mean to present all material facts accurately, clearly, concisely, and legibly in plain English.

(e) *Financial performance representation* means any representation, including any oral, written, or visual representation, to a prospective franchisee, including a representation in the general media, that states, expressly or by implication, a specific level or range of actual or potential sales, income, gross profits, or net profits. The term includes a chart, table, or mathematical calculation that shows possible results based on a combination of variables.

(f) *Fiscal year* refers to the franchisor's fiscal year.

(g) *Fractional franchise* means a franchise relationship that satisfies the following criteria when the relationship is created:

(1) The franchisee, any of the franchisee's current directors or officers, or any current directors or officers of a parent or affiliate, has more than two years of experience in the same type of business; and

(2) The parties have a reasonable basis to anticipate that the sales arising from the relationship will not exceed 20% of the franchisee's total dollar volume in sales during the first year of operation.

(h) *Franchise* means any continuing commercial relationship or arrangement, whatever it may be called, in which the terms of the offer or contract specify, or the franchise seller promises or represents, orally or in writing, that:

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 20 of 65    Page ID #:58

(1) The franchisee will obtain the right to operate a business that is identified or associated with the franchisor's trademark, or to offer, sell, or distribute goods, services, or commodities that are identified or associated with the franchisor's trademark;

(2) The franchisor will exert or has authority to exert a significant degree of control over the franchisee's method of operation, or provide significant assistance in the franchisee's method of operation; and

(3) As a condition of obtaining or commencing operation of the franchise, the franchisee makes a required payment or commits to make a required payment to the franchisor or its affiliate.

(i) *Franchisee* means any person who is granted a franchise.

(j) *Franchise seller* means a person that offers for sale, sells, or arranges for the sale of a franchise. It includes the franchisor and the franchisor's employees, representatives, agents, subfranchisors, and third-party brokers who are involved in franchise sales activities. It does not include existing franchisees who sell only their own outlet and who are otherwise not engaged in franchise sales on behalf of the franchisor.

(k) *Franchisor* means any person who grants a franchise and participates in the franchise relationship. Unless otherwise stated, it includes subfranchisors. For purposes of this definition, a "subfranchisor" means a person who functions as a franchisor by engaging in both pre-sale activities and post-sale performance.

(l) *Leased department* means an arrangement whereby a retailer licenses or otherwise permits a seller to conduct >business from the retailer's location where the seller purchases no goods, services, or commodities directly or indirectly from the retailer, a person the retailer requires the seller to do business with, or a retailer-affiliate if the retailer advises the seller to do business with the affiliate.

(m) *Parent* means an entity that controls another entity directly, or indirectly through one or more subsidiaries.

(n) *Person* means any individual, group, association, limited or general partnership, corporation, or any other entity.

(o) *Plain English* means the organization of information and language usage understandable by a person unfamiliar with the franchise business. It incorporates short sentences; definite, concrete, everyday language; active voice; and tabular presentation of information, where possible. It avoids legal jargon, highly technical business terms, and multiple negatives.

(p) *Predecessor* means a person from whom the franchisor acquired, directly or indirectly, the major portion of the franchisor's assets.

(q) *Principal business address* means the street address of a person's home office in the United States. A principal business address cannot be a post office box or private mail drop.

(r) *Prospective franchisee* means any person (including any agent, representative, or employee) who approaches or is approached by a franchise seller to discuss the possible establishment of a franchise relationship.

(s) *Required payment* means all consideration that the franchisee must pay to the franchisor or an affiliate, either by contract or by practical necessity, as a condition of obtaining or commencing operation of the franchise. A required payment does not include payments for the purchase of reasonable amounts of inventory at bona fide wholesale prices for resale or lease.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 21 of 65    Page ID #:59

(t) *Sale of a franchise* includes an agreement whereby a person obtains a franchise from a franchise seller for value by purchase, license, or otherwise. It does not include extending or renewing an existing franchise agreement where there has been no interruption in the franchisee's operation of the business, unless the new agreement contains terms and conditions that differ materially from the original agreement. It also does not include the transfer of a franchise by an existing franchisee where the franchisor has had no significant involvement with the prospective transferee. A franchisor's approval or disapproval of a transfer alone is not deemed to be significant involvement.

(u) *Signature* means a person's affirmative step to authenticate his or her identity. It includes a person's handwritten signature, as well as a person's use of security codes, passwords, electronic signatures, and similar devices to authenticate his or her identity.

(v) *Trademark* includes trademarks, service marks, names, logos, and other commercial symbols.

(w) *Written* or *in writing* means any document or information in printed form or in any form capable of being preserved in tangible form and read. It includes: type-set, word processed, or handwritten document; information on computer disk or CD-ROM; information sent via email; or information posted on the Internet. It does not include mere oral statements.

## Subpart B—Franchisors' Obligations

## § 436.2 Obligation to furnish documents.

In connection with the offer or sale of a franchise to be located in the United States of America or its territories, unless the transaction is exempted under subpart E of this part, it is an unfair or deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act:

(a) For any franchisor to fail to furnish a prospective franchisee with a copy of the franchisor's current disclosure document, as described in subparts C and D of this part, at least 14 calendar-days before the prospective franchisee signs a binding agreement with, or makes any payment to, the franchisor or an affiliate in connection with the proposed franchise sale.

(b) For any franchisor to alter unilaterally and materially the terms and conditions of the basic franchise agreement or any related agreements attached to the disclosure document without furnishing the prospective franchisee with a copy of each revised agreement at least seven calendar-days before the prospective franchisee signs the revised agreement. Changes to an agreement that arise out of negotiations initiated by the prospective franchisee do not trigger this seven calendar-day period.

(c) For purposes of paragraphs (a) and (b) of this section, the franchisor has furnished the documents by the required date if:

(1) A copy of the document was hand-delivered, faxed, emailed, or otherwise delivered to the prospective franchisee by the required date;

(2) Directions for accessing the document on the Internet were provided to the prospective franchisee by the required date; or

(3) A paper or tangible electronic copy (for example, computer disk or CD-ROM) was sent to the address specified by the prospective franchisee by first-class United States mail at least three calendar days before the required date.

## Subpart C—Contents of a Disclosure Document

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 22 of 65   Page ID #:60

## § 436.3 Cover page.

Begin the disclosure document with a cover page, in the order and form as follows:

(a)  The title "FRANCHISE DISCLOSURE DOCUMENT" in capital letters and bold type.

(b)  The franchisor's name, type of business organization, principal business address, telephone number, and, if applicable, email address and primary home page address.

(c)  A sample of the primary business trademark that the franchisee will use in its business.

(d)  A brief description of the franchised business.

(e)  The following statements:

    (1)  The total investment necessary to begin operation of a [franchise system name] franchise is [the total amount of Item 7 (§ 436.5(g))]. This includes [the total amount in Item 5 (§ 436.5(e))] that must be paid to the franchisor or affiliate.

    (2)  This disclosure document summarizes certain provisions of your franchise agreement and other information in plain English. Read this disclosure document and all accompanying agreements carefully. You must receive this disclosure document at least 14 calendar-days before you sign a binding agreement with, or make any payment to, the franchisor or an affiliate in connection with the proposed franchise sale. [The following sentence in bold type] NOTE, HOWEVER, THAT NO GOVERNMENTAL AGENCY HAS VERIFIED THE INFORMATION CONTAINED IN THIS DOCUMENT.

    (3)  The terms of your contract will govern your franchise relationship. Don't rely on the disclosure document alone to understand your contract. Read all of your contract carefully. Show your contract and this disclosure document to an advisor, like a lawyer or an accountant.

    (4)  Buying a franchise is a complex investment. The information in this disclosure document can help you make up your mind. More information on franchising, such as *A Consumer's Guide to Buying a Franchise*," which can help you understand how to use this disclosure document, is available from the Federal Trade Commission. You can contact the FTC at 1-877-FTC-HELP or by writing to the FTC at 600 Pennsylvania Avenue, NW., Washington, D.C. 20580. You can also visit the FTC's home page at *www.ftc.gov* for additional information. Call your state agency or visit your public library for other sources of information on franchising.

    (5)  There may also be laws on franchising in your state. Ask your state agencies about them.

    (6)  [The issuance date].

(f)  A franchisor may include the following statement between the statements set out at paragraphs (e)(2) and (3) of this section: "You may wish to receive your disclosure document in another format that is more convenient for you. To discuss the availability of disclosures in different formats, contact [name or office] at [address] and [telephone number]."

(g)  Franchisors may include additional disclosures on the cover page, on a separate cover page, or addendum to comply with state pre-sale disclosure laws.

## § 436.4 Table of contents.

Include the following table of contents. State the page where each disclosure Item begins. List all exhibits by letter, as shown in the following example.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 23 of 65    Page ID #:61

# Table of Contents

1. The Franchisor and any Parents, Predecessors, and Affiliates

2. Business Experience

3. Litigation

4. Bankruptcy

5. Initial Fees

6. Other Fees

7. Estimated Initial Investment

8. Restrictions on Sources of Products and Services

9. Franchisee's Obligations

10. Financing

11. Franchisor's Assistance, Advertising, Computer Systems, and Training

12. Territory

13. Trademarks

14. Patents, Copyrights, and Proprietary Information

15. Obligation to Participate in the Actual Operation of the Franchise Business

16. Restrictions on What the Franchisee May Sell

17. Renewal, Termination, Transfer, and Dispute Resolution

18. Public Figures

19. Financial Performance Representations

20. Outlets and Franchisee Information

21. Financial Statements

22. Contracts

23. Receipts

EXHIBITS

A. Franchise Agreement

## § 436.5 Disclosure items.

(a)   *Item 1* : *The Franchisor, and any Parents, Predecessors, and Affiliates.* Disclose:

(1)   The name and principal business address of the franchisor; any parents; and any affiliates that offer franchises in any line of business or provide products or services to the franchisees of the franchisor.

(2)   The name and principal business address of any predecessors during the 10-year period immediately before the close of the franchisor's most recent fiscal year.

(3)   The name that the franchisor uses and any names it intends to use to conduct business.

(4)   The identity and principal business address of the franchisor's agent for service of process.

(5)   The type of business organization used by the franchisor (for example, corporation, partnership) and the state in which it was organized.

(6)   The following information about the franchisor's business and the franchises offered:

(i)   Whether the franchisor operates businesses of the type being franchised.

(ii)   The franchisor's other business activities.

(iii)   The business the franchisee will conduct.

(iv)   The general market for the product or service the franchisee will offer. In describing the general market, consider factors such as whether the market is developed or developing, whether the goods will be sold primarily to a certain group, and whether sales are seasonal.

(v)   In general terms, any laws or regulations specific to the industry in which the franchise business operates.

(vi)   A general description of the competition.

(7)   The prior business experience of the franchisor; any predecessors listed in § 436.5(a)(2) of this part; and any affiliates that offer franchises in any line of business or provide products or services to the franchisees of the franchisor, including:

(i)   The length of time each has conducted the type of business the franchisee will operate.

(ii)   The length of time each has offered franchises providing the type of business the franchisee will operate.

(iii)   Whether each has offered franchises in other lines of business. If so, include:

(A)   A description of each other line of business.

(B)   The number of franchises sold in each other line of business.

(C)   The length of time each has offered franchises in each other line of business.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 25 of 65   Page ID #:63

(b)   *Item 2* : *Business Experience.* Disclose by name and position the franchisor's directors, trustees, general partners, principal officers, and any other individuals who will have management responsibility relating to the sale or operation of franchises offered by this document. For each person listed in this section, state his or her principal positions and employers during the past five years, including each position's starting date, ending date, and location.

(c)   *Item 3* : *Litigation.*

   (1)   Disclose whether the franchisor; a predecessor; a parent or affiliate who induces franchise sales by promising to back the franchisor financially or otherwise guarantees the franchisor's performance; an affiliate who offers franchises under the franchisor's principal trademark; and any person identified in § 436.5(b) of this part:

   (i)   Has pending against that person:

   (A)   An administrative, criminal, or material civil action alleging a violation of a franchise, antitrust, or securities law, or alleging fraud, unfair or deceptive practices, or comparable allegations.

   (B)   Civil actions, other than ordinary routine litigation incidental to the business, which are material in the context of the number of franchisees and the size, nature, or financial condition of the franchise system or its business operations.

   (ii)   Was a party to any material civil action involving the franchise relationship in the last fiscal year. For purposes of this section, "franchise relationship" means contractual obligations between the franchisor and franchisee directly relating to the operation of the franchised business (such as royalty payment and training obligations). It does not include actions involving suppliers or other third parties, or indemnification for tort liability.

   (iii)   Has in the 10-year period immediately before the disclosure document's issuance date:

   (A)   Been convicted of or pleaded nolo contendere to a felony charge.

   (B)   Been held liable in a civil action involving an alleged violation of a franchise, antitrust, or securities law, or involving allegations of fraud, unfair or deceptive practices, or comparable allegations. "Held liable" means that, as a result of claims or counterclaims, the person must pay money or other consideration, must reduce an indebtedness by the amount of an award, cannot enforce its rights, or must take action adverse to its interests.

   (2)   Disclose whether the franchisor; a predecessor; a parent or affiliate who guarantees the franchisor's performance; an affiliate who has offered or sold franchises in any line of business within the last 10 years; or any other person identified in § 436.5(b) of this part is subject to a currently effective injunctive or restrictive order or decree resulting from a pending or concluded action brought by a public agency and relating to the franchise or to a Federal, State, or Canadian franchise, securities, antitrust, trade regulation, or trade practice law.

   (3)   For each action identified in paragraphs (c)(1) and (2) of this section, state the title, case number or citation, the initial filing date, the names of the parties, the forum, and the relationship of the opposing party to the franchisor (for example, competitor, supplier, lessor, franchisee, former franchisee, or class of franchisees). Except as provided in paragraph (c)(4) of this section, summarize the legal and factual nature of each claim in the action, the relief sought or obtained, and any conclusions of law or fact.[1] In addition, state:

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 26 of 65   Page ID #:64

  (i) For pending actions, the status of the action.

  (ii) For prior actions, the date when the judgment was entered and any damages or settlement terms.[2]

  (iii) For injunctive or restrictive orders, the nature, terms, and conditions of the order or decree.

  (iv) For convictions or pleas, the crime or violation, the date of conviction, and the sentence or penalty imposed.

 (4) For any other franchisor-initiated suit identified in paragraph (c)(1)(ii) of this section, the franchisor may comply with the requirements of paragraphs (c)(3)(i) through (iv) of this section by listing individual suits under one common heading that will serve as the case summary (for example, "royalty collection suits").

(d) *Item 4* : *Bankruptcy.*

 (1) Disclose whether the franchisor; any parent; predecessor; affiliate; officer, or general partner of the franchisor, or any other individual who will have management responsibility relating to the sale or operation of franchises offered by this document, has, during the 10-year period immediately before the date of this disclosure document:

  (i) Filed as debtor (or had filed against it) a petition under the United States Bankruptcy Code ("Bankruptcy Code").

  (ii) Obtained a discharge of its debts under the Bankruptcy Code.

  (iii) Been a principal officer of a company or a general partner in a partnership that either filed as a debtor (or had filed against it) a petition under the Bankruptcy Code, or that obtained a discharge of its debts under the Bankruptcy Code while, or within one year after, the officer or general partner held the position in the company.

 (2) For each bankruptcy, state:

  (i) The current name, address, and principal place of business of the debtor.

  (ii) Whether the debtor is the franchisor. If not, state the relationship of the debtor to the franchisor (for example, affiliate, officer).

  (iii) The date of the original filing and the material facts, including the bankruptcy court, and the case name and number. If applicable, state the debtor's discharge date, including discharges under Chapter 7 and confirmation of any plans of reorganization under Chapters 11 and 13 of the Bankruptcy Code.

---

[1] Franchisors may include a summary opinion of counsel concerning any action if counsel consent to use the summary opinion and the full opinion is attached to the disclosure document.

[2] If a settlement agreement must be disclosed in this Item, all material settlement terms must be disclosed, whether or not the agreement is confidential. However, franchisors need not disclose the terms of confidential settlements entered into before commencing franchise sales. Further, any franchisor who has historically used only the Franchise Rule format, or who is new to franchising, need not disclose confidential settlements entered prior to the effective date of this Rule.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 27 of 65   Page ID #:65

(3)  Disclose cases, actions, and other proceedings under the laws of foreign nations relating to bankruptcy.

(e)  **Item 5** : *Initial Fees*. Disclose the initial fees and any conditions under which these fees are refundable. If the initial fees are not uniform, disclose the range or formula used to calculate the initial fees paid in the fiscal year before the issuance date and the factors that determined the amount. For this section, "initial fees" means all fees and payments, or commitments to pay, for services or goods received from the franchisor or any affiliate before the franchisee's business opens, whether payable in lump sum or installments. Disclose installment payment terms in this section or in § 436.5(j) of this part.

(f)  **Item 6** : *Other Fees*. Disclose, in the following tabular form, all other fees that the franchisee must pay to the franchisor or its affiliates, or that the franchisor or its affiliates impose or collect in whole or in part for a third party. State the title "OTHER FEES" in capital letters using bold type. Include any formula used to compute the fees.[3]

## ITEM 6 TABLE
## OTHER FEES

| Column 1 Type of fee | Column 2 Amount | Column 3 Due Date | Column 4 Remarks |
|---|---|---|---|

(1)  In column 1, list the type of fee (for example, royalties, and fees for lease negotiations, construction, remodeling, additional training or assistance, advertising, advertising cooperatives, purchasing cooperatives, audits, accounting, inventory, transfers, and renewals).

(2)  In column 2, state the amount of the fee.

(3)  In column 3, state the due date for each fee.

(4)  In column 4, include remarks, definitions, or caveats that elaborate on the information in the table. If remarks are long, franchisors may use footnotes instead of the remarks column. If applicable, include the following information in the remarks column or in a footnote:

  (i)   Whether the fees are payable only to the franchisor.

  (ii)  Whether the fees are imposed and collected by the franchisor.

  (iii) Whether the fees are non-refundable or describe the circumstances when the fees are refundable.

  (iv)  Whether the fees are uniformly imposed.

---

[3] If fees may increase, disclose the formula that determines the increase or the maximum amount of the increase. For example, a percentage of gross sales is acceptable if the franchisor defines the term "gross sales."

(v)   The voting power of franchisor-owned outlets on any fees imposed by cooperatives. If franchisor-owned outlets have controlling voting power, disclose the maximum and minimum fees that may be imposed.

(g)   **Item 7** : *Estimated Initial Investment.* Disclose, in the following tabular form, the franchisee's estimated initial investment. State the title "YOUR ESTIMATED INITIAL INVESTMENT" in capital letters using bold type. Franchisors may include additional expenditure tables to show expenditure variations caused by differences such as in site location and premises size.

## ITEM 7 TABLE:
## YOUR ESTIMATED INITIAL INVESTMENT

| Column 1 Type of expenditure | Column 2 Amount | Column 3 Method of payment | Column 4 When due | Column 4 To whom payment is to be made |
|---|---|---|---|---|
| Total. | | | | |

(1)   In column 1:

(i)   List each type of expense, beginning with pre-opening expenses. Include the following expenses, if applicable. Use footnotes to include remarks, definitions, or caveats that elaborate on the information in the Table.

(A)   The initial franchise fee.

(B)   Training expenses.

(C)   Real property, whether purchased or leased.

(D)   Equipment, fixtures, other fixed assets, construction, remodeling, leasehold improvements, and decorating costs, whether purchased or leased.

(E)   Inventory to begin operating.

(F)   Security deposits, utility deposits, business licenses, and other prepaid expenses.

(ii)   List separately and by name any other specific required payments (for example, additional training, travel, or advertising expenses) that the franchisee must make to begin operations.

(iii)   Include a category titled "Additional funds— [initial period]" for any other required expenses the franchisee will incur before operations begin and during the initial period of operations. State the initial period. A reasonable initial period is at least three months or a reasonable period for the industry. Describe in general terms the factors, basis, and experience that the franchisor considered or relied upon in formulating the amount required for additional funds.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 29 of 65    Page ID #:67

(2) In column 2, state the amount of the payment. If the amount is unknown, use a low-high range based on the franchisor's current experience. If real property costs cannot be estimated in a low-high range, describe the approximate size of the property and building and the probable location of the building (for example, strip shopping center, mall, downtown, rural, or highway).

(3) In column 3, state the method of payment.

(4) In column 4, state the due date.

(5) In column 5, state to whom payment will be made.

(6) Total the initial investment, incorporating ranges of fees, if used.

(7) In a footnote, state:

(i) Whether each payment is non-refundable, or describe the circumstances when each payment is refundable.

(ii) If the franchisor or an affiliate finances part of the initial investment, the amount that it will finance, the required down payment, the annual interest rate, rate factors, and the estimated loan repayments. Franchisors may refer to § 436.5(j) of this part for additional details.

(h) *Item 8* : *Restrictions on Sources of Products and Services.* Disclose the franchisee's obligations to purchase or lease goods, services, supplies, fixtures, equipment, inventory, computer hardware and software, real estate, or comparable items related to establishing or operating the franchised business either from the franchisor, its designee, or suppliers approved by the franchisor, or under the franchisor's specifications. Include obligations to purchase imposed by the franchisor's written agreement or by the franchisor's practice.[4] For each applicable obligation, state:

(1) The good or service required to be purchased or leased.

(2) Whether the franchisor or its affiliates are approved suppliers or the only approved suppliers of that good or service.

(3) Any supplier in which an officer of the franchisor owns an interest.

(4) How the franchisor grants and revokes approval of alternative suppliers, including:

(i) Whether the franchisor's criteria for approving suppliers are available to franchisees.

(ii) Whether the franchisor permits franchisees to contract with alternative suppliers who meet the franchisor's criteria.

(iii) Any fees and procedures to secure approval to purchase from alternative suppliers.

(iv) The time period in which the franchisee will be notified of approval or disapproval.

(v) How approvals are revoked.

---

[4] Franchisors may include the reason for the requirement. Franchisors need not disclose in this Item the purchase or lease of goods or services provided as part of the franchise without a separate charge (such as initial training, if the cost is included in the franchise fee). Describe such fees in Item 5 of this section. Do not disclose fees already described in § 436.5(f) of this part.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 30 of 65   Page ID #:68

(5) Whether the franchisor issues specifications and standards to franchisees, subfranchisees, or approved suppliers. If so, describe how the franchisor issues and modifies specifications.

(6) Whether the franchisor or its affiliates will or may derive revenue or other material consideration from required purchases or leases by franchisees. If so, describe the precise basis by which the franchisor or its affiliates will or may derive that consideration by stating:

   (i)   The franchisor's total revenue.[5]

   (ii)  The franchisor's revenues from all required purchases and leases of products and services.

   (iii) The percentage of the franchisor's total revenues that are from required purchases or leases.

   (iv)  If the franchisor's affiliates also sell or lease products or services to franchisees, the affiliates' revenues from those sales or leases.

(7) The estimated proportion of these required purchases and leases by the franchisee to all purchases and leases by the franchisee of goods and services in establishing and operating the franchised businesses.

(8) If a designated supplier will make payments to the franchisor from franchisee purchases, disclose the basis for the payment (for example, specify a percentage or a flat amount). For purposes of this disclosure, a "payment" includes the sale of similar goods or services to the franchisor at a lower price than to franchisees.

(9) The existence of purchasing or distribution cooperatives.

(10) Whether the franchisor negotiates purchase arrangements with suppliers, including price terms, for the benefit of franchisees.

(11) Whether the franchisor provides material benefits (for example, renewal or granting additional franchises) to a franchisee based on a franchisee's purchase of particular products or services or use of particular suppliers.

---

[5] Take figures from the franchisor's most recent annual audited financial statement required in § 436.5(u) of this part. If audited statements are not yet required, or if the entity deriving the income is an affiliate, disclose the sources of information used in computing revenues.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 31 of 65   Page ID #:69

(i)  *Item 9* : *Franchisee's Obligations.* Disclose, in the following tabular form, a list of the franchisee's principal obligations. State the title "FRANCHISEE'S OBLIGATIONS" in capital letters using bold type. Cross-reference each listed obligation with any applicable section of the franchise or other agreement and with the relevant disclosure document provision. If a particular obligation is not applicable, state "Not Applicable." Include additional obligations, as warranted.

## ITEM 9 TABLE:
## FRANCHISEE'S OBLIGATIONS

[IN BOLD] THIS TABLE LISTS YOUR PRINCIPAL OBLIGATIONS UNDER THE FRANCHISE AND OTHER AGREEMENTS. IT WILL HELP YOU FIND MORE DETAILED INFORMATION ABOUT YOUR OBLIGATIONS IN THESE AGREEMENTS AND IN OTHER ITEMS OF THIS DISCLOSURE DOCUMENT.

| OBLIGATION | SECTION IN AGREEMENT | DISCLOSURE DOCUMENT ITEM |
|---|---|---|
| a. Site selection and acquisition/lease | | |
| b. Pre-opening purchase/leases | | |
| c. Site development and other pre-opening requirements | | |
| d. Initial and ongoing training | | |
| e. Opening | | |
| f. Fees | | |
| g. Compliance with standards and policies/operating manual | | |
| h. Trademarks and proprietary information | | |
| i. Restrictions on products/services offered | | |
| j. Warranty and customer service requirements | | |
| k. Territorial development and sales quotas | | |
| l. Ongoing product/service purchases | | |
| m. Maintenance, appearance, and remodeling requirements | | |
| n. Insurance | | |
| o. Advertising | | |
| p. Indemnification | | |
| q. Owner's participation/management/staffing | | |
| r. Records and reports | | |
| s. Inspections and audits | | |
| t. Transfer | | |
| u. Renewal | | |

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 32 of 65    Page ID #:70

| OBLIGATION | SECTION IN AGREEMENT | DISCLOSURE DOCUMENT ITEM |
|---|---|---|
| v. Post-termination obligations | | |
| w. Non-competition covenants | | |
| x. Dispute resolution | | |
| y. Other (describe) | | |

(j)   *Item 10* : *Financing.*

(1)   Disclose the terms of each financing arrangement, including leases and installment contracts, that the franchisor, its agent, or affiliates offer directly or indirectly to the franchisee.[6] The franchisor may summarize the terms of each financing arrangement in tabular form, using footnotes to provide additional information. For a sample Item 10 table, see appendix A of this part. For each financing arrangement, state:

(i)   What the financing covers (for example, the initial franchise fee, site acquisition, construction or remodeling, initial or replacement equipment or fixtures, opening or ongoing inventory or supplies, or other continuing expenses).[7]

(ii)   The identity of each lender providing financing and their relationship to the franchisor (for example, affiliate).

(iii)   The amount of financing offered or, if the amount depends on an actual cost that may vary, the percentage of the cost that will be financed.

(iv)   The rate of interest, plus finance charges, expressed on an annual basis. If the rate of interest, plus finance charges, expressed on an annual basis, may differ depending on when the financing is issued, state what that rate was on a specified recent date.

(v)   The number of payments or the period of repayment.

(vi)   The nature of any security interest required by the lender.

(vii)   Whether a person other than the franchisee must personally guarantee the debt.

(viii)   Whether the debt can be prepaid and the nature of any prepayment penalty.

(ix)   The franchisee's potential liabilities upon default, including any:

---

[6] Indirect offers of financing include a written arrangement between a franchisor or its affiliate and a lender, for the lender to offer financing to a franchisee; an arrangement in which a franchisor or its affiliate receives a benefit from a lender in exchange for financing a franchise purchase; and a franchisor's guarantee of a note, lease, or other obligation of the franchisee.

[7] Include sample copies of the financing documents as an exhibit to § 436.5(v) of this part. Cite the section and name of the document containing the financing terms and conditions.

(A) Accelerated obligation to pay the entire amount due;

(B) Obligations to pay court costs and attorney's fees incurred in collecting the debt;

(C) Termination of the franchise; and

(D) Liabilities from cross defaults such as those resulting directly from non-payment, or indirectly from the loss of business property.

(x) Other material financing terms.

(2) Disclose whether the loan agreement requires franchisees to waive defenses or other legal rights (for example, confession of judgment), or bars franchisees from asserting a defense against the lender, the lender's assignee or the franchisor. If so, describe the relevant provisions.

(3) Disclose whether the franchisor's practice or intent is to sell, assign, or discount to a third party all or part of the financing arrangement. If so, state:

(i) The assignment terms, including whether the franchisor will remain primarily obligated to provide the financed goods or services; and

(ii) That the franchisee may lose all its defenses against the lender as a result of the sale or assignment.

(4) Disclose whether the franchisor or an affiliate receives any consideration for placing financing with the lender. If such payments exist:

(i) Disclose the amount or the method of determining the payment; and

(ii) Identify the source of the payment and the relationship of the source to the franchisor or its affiliates.

(k) ***Item 11: Franchisor's Assistance, Advertising, Computer Systems, and Training.*** Disclose the franchisor's principal assistance and related obligations of both the franchisor and franchisee as follows. For each obligation, cite the section number of the franchise agreement imposing the obligation. Begin by stating the following sentence in bold type: "EXCEPT AS LISTED BELOW, [THE FRANCHISOR] IS NOT REQUIRED TO PROVIDE YOU WITH ANY ASSISTANCE."

(1) Disclose the franchisor's pre-opening obligations to the franchisee, including any assistance in:

(i) Locating a site and negotiating the purchase or lease of the site. If such assistance is provided, state:

(A) Whether the franchisor generally owns the premises and leases it to the franchisee.

(B) Whether the franchisor selects the site or approves an area in which the franchisee selects a site. If so, state further whether and how the franchisor must approve a franchisee-selected site.

(C) The factors that the franchisor considers in selecting or approving sites (for example, general location and neighborhood, traffic patterns, parking, size, physical characteristics of existing buildings, and lease terms).

(D) The time limit for the franchisor to locate or approve or disapprove the site and the consequences if the franchisor and franchisee cannot agree on a site.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 34 of 65   Page ID #:72

    (ii)  Conforming the premises to local ordinances and building codes and obtaining any required permits.

    (iii)  Constructing, remodeling, or decorating the premises.

    (iv)  Hiring and training employees.

    (v)  Providing for necessary equipment, signs, fixtures, opening inventory, and supplies. If any such assistance is provided, state:

        (A)  Whether the franchisor provides these items directly or only provides the names of approved suppliers.

        (B)  Whether the franchisor provides written specifications for these items.

        (C)  Whether the franchisor delivers or installs these items.

(2)  Disclose the typical length of time between the earlier of the signing of the franchise agreement or the first payment of consideration for the franchise and the opening of the franchisee's business. Describe the factors that may affect the time period, such as ability to obtain a lease, financing or building permits, zoning and local ordinances, weather conditions, shortages, or delayed installation of equipment, fixtures, and signs.

(3)  Disclose the franchisor's obligations to the franchisee during the operation of the franchise, including any assistance in:

    (i)  Developing products or services the franchisee will offer to its customers.

    (ii)  Hiring and training employees.

    (iii)  Improving and developing the franchised business.

    (iv)  Establishing prices.

    (v)  Establishing and using administrative, bookkeeping, accounting, and inventory control procedures.

    (vi)  Resolving operating problems encountered by the franchisee.

(4)  Describe the advertising program for the franchise system, including the following:

    (i)  The franchisor's obligation to conduct advertising, including:

        (A)  The media the franchisor may use.

        (B)  Whether media coverage is local, regional, or national.

        (C)  The source of the advertising (for example, an in-house advertising department or a national or regional advertising agency).

        (D)  Whether the franchisor must spend any amount on advertising in the area or territory where the franchisee is located.

    (ii)  The circumstances when the franchisor will permit franchisees to use their own advertising material.

    (iii)  Whether there is an advertising council composed of franchisees that advises the franchisor on advertising policies. If so, disclose:

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 35 of 65    Page ID #:73

      (A)   How members of the council are selected.

      (B)   Whether the council serves in an advisory capacity only or has operational or decision-making power.

      (C)   Whether the franchisor has the power to form, change, or dissolve the advertising council.

  (iv)  Whether the franchisee must participate in a local or regional advertising cooperative. If so, state:

      (A)   How the area or membership of the cooperative is defined.

      (B)   How much the franchisee must contribute to the fund and whether other franchisees must contribute a different amount or at a different rate.

      (C)   Whether the franchisor-owned outlets must contribute to the fund and, if so, whether those contributions are on the same basis as those for franchisees.

      (D)   Who is responsible for administering the cooperative (for example, franchisor, franchisees, or advertising agency).

      (E)   Whether cooperatives must operate from written governing documents and whether the documents are available for the franchisee to review.

      (F)   Whether cooperatives must prepare annual or periodic financial statements and whether the statements are available for review by the franchisee.

      (G)   Whether the franchisor has the power to require cooperatives to be formed, changed, dissolved, or merged.

  (v)  Whether the franchisee must participate in any other advertising fund. If so, state:

      (A)   Who contributes to the fund.

      (B)   How much the franchisee must contribute to the fund and whether other franchisees must contribute a different amount or at a different rate.

      (C)   Whether the franchisor-owned outlets must contribute to the fund and, if so, whether it is on the same basis as franchisees.

      (D)   Who administers the fund.

      (E)   Whether the fund is audited and when it is audited.

      (F)   Whether financial statements of the fund are available for review by the franchisee.

      (G)   How the funds were used in the most recently concluded fiscal year, including the percentages spent on production, media placement, administrative expenses, and a description of any other use.

  (vi)  If not all advertising funds are spent in the fiscal year in which they accrue, how the franchisor uses the remaining amount, including whether franchisees receive a periodic accounting of how advertising fees are spent.

  (vii)  The percentage of advertising funds, if any, that the franchisor uses principally to solicit new franchise sales.

(5) Disclose whether the franchisor requires the franchisee to buy or use electronic cash registers or computer systems. If so, describe the systems generally in non-technical language, including the types of data to be generated or stored in these systems, and state the following:

    (i) The cost of purchasing or leasing the systems.

    (ii) Any obligation of the franchisor, any affiliate, or third party to provide ongoing maintenance, repairs, upgrades, or updates.

    (iii) Any obligations of the franchisee to upgrade or update any system during the term of the franchise, and, if so, any contractual limitations on the frequency and cost of the obligation.

    (iv) The annual cost of any optional or required maintenance, updating, upgrading, or support contracts.

    (v) Whether the franchisor will have independent access to the information that will be generated or stored in any electronic cash register or computer system. If so, describe the information that the franchisor may access and whether there are any contractual limitations on the franchisor's right to access the information.

(6) Disclose the table of contents of the franchisor's operating manual provided to franchisees as of the franchisor's last fiscal year-end or a more recent date. State the number of pages devoted to each subject and the total number of pages in the manual as of this date. This disclosure may be omitted if the franchisor offers the prospective franchisee the opportunity to view the manual before buying the franchise.

(7) Disclose the franchisor's training program as of the franchisor's last fiscal year-end or a more recent date.

    (i) Describe the training program in the following tabular form. Title the table "TRAINING PROGRAM" in capital letters and bold type.

## ITEM 11 TABLE
## TRAINING PROGRAM

| Column 1 Subject | Column 2 Hours of Classroom Training | Column 3 Hours of On-The-Job Training | Column 4 Location |
| --- | --- | --- | --- |

    (A) In column 1, state the subjects taught.

    (B) In column 2, state the hours of classroom training for each subject.

    (C) In column 3, state the hours of on-the-job training for each subject.

    (D) In column 4, state the location of the training for each subject.

    (ii) State further:

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 37 of 65    Page ID #:75

(A) How often training classes are held and the nature of the location or facility where training is held (for example, company, home, office, franchisor-owned store).

(B) The nature of instructional materials and the instructor's experience, including the instructor's length of experience in the field and with the franchisor. State only experience relevant to the subject taught and the franchisor's operations.

(C) Any charges franchisees must pay for training and who must pay travel and living expenses of the training program enrollees.

(D) Who may and who must attend training. State whether the franchisee or other persons must complete the program to the franchisor's satisfaction. If successful completion is required, state how long after signing the agreement or before opening the business the training must be completed. If training is not mandatory, state the percentage of new franchisees that enrolled in the training program during the preceding 12 months.

(E) Whether additional training programs or refresher courses are required.

(l) *Item 12* : *Territory.* Disclose:

(1) Whether the franchise is for a specific location or a location to be approved by the franchisor.

(2) Any minimum territory granted to the franchisee (for example, a specific radius, a distance sufficient to encompass a specified population, or another specific designation).

(3) The conditions under which the franchisor will approve the relocation of the franchised business or the franchisee's establishment of additional franchised outlets.

(4) Franchisee options, rights of first refusal, or similar rights to acquire additional franchises.

(5) Whether the franchisor grants an exclusive territory.

(i) If the franchisor does not grant an exclusive territory, state: "You will not receive an exclusive territory. You may face competition from other franchisees, from outlets that we own, or from other channels of distribution or competitive brands that we control."

(ii) If the franchisor grants an exclusive territory, disclose:

(A) Whether continuation of territorial exclusivity depends on achieving a certain sales volume, market penetration, or other contingency, and the circumstances when the franchisee's territory may be altered. Describe any sales or other conditions. State the franchisor's rights if the franchisee fails to meet the requirements.

(B) Any other circumstances that permit the franchisor to modify the franchisee's territorial rights (for example, a population increase in the territory giving the franchisor the right to grant an additional franchise in the area) and the effect of such modifications on the franchisee's rights.

(6) For all territories (exclusive and non-exclusive):

(i) Any restrictions on the franchisor from soliciting or accepting orders from consumers inside the franchisee's territory, including:

(A) Whether the franchisor or an affiliate has used or reserves the right to use other channels of distribution, such as the Internet, catalog sales, telemarketing, or other direct marketing sales, to make sales within the franchisee's territory using the franchisor's principal trademarks.

(B) Whether the franchisor or an affiliate has used or reserves the right to use other channels of distribution, such as the Internet, catalog sales, telemarketing, or other direct marketing, to make sales within the franchisee's territory of products or services under trademarks different from the ones the franchisee will use under the franchise agreement.

(C) Any compensation that the franchisor must pay for soliciting or accepting orders from inside the franchisee's territory.

(ii) Any restrictions on the franchisee from soliciting or accepting orders from consumers outside of his or her territory, including whether the franchisee has the right to use other channels of distribution, such as the Internet, catalog sales, telemarketing, or other direct marketing, to make sales outside of his or her territory.

(iii) If the franchisor or an affiliate operates, franchises, or has plans to operate or franchise a business under a different trademark and that business sells or will sell goods or services similar to those the franchisee will offer, describe:

(A) The similar goods and services.

(B) The different trademark.

(C) Whether outlets will be franchisor owned or operated.

(D) Whether the franchisor or its franchisees who use the different trademark will solicit or accept orders within the franchisee's territory.

(E) The timetable for the plan.

(F) How the franchisor will resolve conflicts between the franchisor and franchisees and between the franchisees of each system regarding territory, customers, and franchisor support.

(G) The principal business address of the franchisor's similar operating business. If it is the same as the franchisor's principal business address stated in § 436.5(a) of this part, disclose whether the franchisor maintains (or plans to maintain) physically separate offices and training facilities for the similar competing business.

(m) *Item 13* : *Trademarks.*

(1) Disclose each principal trademark to be licensed to the franchisee. For this Item, "principal trademark" means the primary trademarks, service marks, names, logos, and commercial symbols the franchisee will use to identify the franchised business. It may not include every trademark the franchisor owns.

(2) Disclose whether each principal trademark is registered with the United States Patent and Trademark Office. If so, state:

(i) The date and identification number of each trademark registration.

(ii) Whether the franchisor has filed all required affidavits.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 39 of 65    Page ID #:77

(iii) Whether any registration has been renewed.

(iv) Whether the principal trademarks are registered on the Principal or Supplemental Register of the United States Patent and Trademark Office.

(3) If the principal trademark is not registered with the United States Patent and Trademark Office, state whether the franchisor has filed any trademark application, including any "intent to use" application or an application based on actual use. If so, state the date and identification number of the application.

(4) If the trademark is not registered on the Principal Register of the United States Patent and Trademark Office, state: "We do not have a federal registration for our principal trademark. Therefore, our trademark does not have many legal benefits and rights as a federally registered trademark. If our right to use the trademark is challenged, you may have to change to an alternative trademark, which may increase your expenses."

(5) Disclose any currently effective material determinations of the United States Patent and Trademark Office, the Trademark Trial and Appeal Board, or any state trademark administrator or court; and any pending infringement, opposition, or cancellation proceeding. Include infringement, opposition, or cancellation proceedings in which the franchisor unsuccessfully sought to prevent registration of a trademark in order to protect a trademark licensed by the franchisor. Describe how the determination affects the ownership, use, or licensing of the trademark.

(6) Disclose any pending material federal or state court litigation regarding the franchisor's use or ownership rights in a trademark. For each pending action, disclose:[8]

(i) The forum and case number.

(ii) The nature of claims made opposing the franchisor's use of the trademark or by the franchisor opposing another person's use of the trademark.

(iii) Any effective court or administrative agency ruling in the matter.

(7) Disclose any currently effective agreements that significantly limit the franchisor's rights to use or license the use of trademarks listed in this section in a manner material to the franchise. For each agreement, disclose:

(i) The manner and extent of the limitation or grant.

(ii) The extent to which the agreement may affect the franchisee.

(iii) The agreement's duration.

(iv) The parties to the agreement.

(v) The circumstances when the agreement may be canceled or modified.

(vi) All other material terms.

(8) Disclose:

---

[8] The franchisor may include an attorney's opinion relative to the merits of litigation or of an action if the attorney issuing the opinion consents to its use. The text of the disclosure may include a summary of the opinion if the full opinion is attached and the attorney issuing the opinion consents to the use of the summary.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 40 of 65   Page ID #:78

(i) Whether the franchisor must protect the franchisee's right to use the principal trademarks listed in this section, and must protect the franchisee against claims of infringement or unfair competition arising out of the franchisee's use of the trademarks.

(ii) The franchisee's obligation to notify the franchisor of the use of, or claims of rights to, a trademark identical to or confusingly similar to a trademark licensed to the franchisee.

(iii) Whether the franchise agreement requires the franchisor to take affirmative action when notified of these uses or claims.

(iv) Whether the franchisor or franchisee has the right to control any administrative proceedings or litigation involving a trademark licensed by the franchisor to the franchisee.

(v) Whether the franchise agreement requires the franchisor to participate in the franchisee's defense and/or indemnify the franchisee for expenses or damages if the franchisee is a party to an administrative or judicial proceeding involving a trademark licensed by the franchisor to the franchisee, or if the proceeding is resolved unfavorably to the franchisee.

(vi) The franchisee's rights under the franchise agreement if the franchisor requires the franchisee to modify or discontinue using a trademark.

(9) Disclose whether the franchisor knows of either superior prior rights or infringing uses that could materially affect the franchisee's use of the principal trademarks in the state where the franchised business will be located. For each use of a principal trademark that the franchisor believes is an infringement that could materially affect the franchisee's use of a trademark, disclose:

(i) The nature of the infringement.

(ii) The locations where the infringement is occurring.

(iii) The length of time of the infringement (to the extent known).

(iv) Any action taken or anticipated by the franchisor.

(n) *Item 14* : *Patents, Copyrights, and Proprietary Information.*

(1) Disclose whether the franchisor owns rights in, or licenses to, patents or copyrights that are material to the franchise. Also, disclose whether the franchisor has any pending patent applications that are material to the franchise. If so, state:

(i) The nature of the patent, patent application, or copyright and its relationship to the franchise.

(ii) For each patent:

(A) The duration of the patent.

(B) The type of patent (for example, mechanical, process, or design).

(C) The patent number, issuance date, and title.

(iii) For each patent application:

(A) The type of patent application (for example, mechanical, process, or design).

(B) The serial number, filing date, and title.

(iv) For each copyright:

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 41 of 65   Page ID #:79

    (A)  The duration of the copyright.

    (B)  The registration number and date.

    (C)  Whether the franchisor can and intends to renew the copyright.

(2)  Describe any current material determination of the United States Patent and Trademark Office, the United States Copyright Office, or a court regarding the patent or copyright. Include the forum and matter number. Describe how the determination affects the franchised business.

(3)  State the forum, case number, claims asserted, issues involved, and effective determinations for any material proceeding pending in the United States Patent and Trademark Office or any court.[9]

(4)  If an agreement limits the use of the patent, patent application, or copyright, state the parties to and duration of the agreement, the extent to which the agreement may affect the franchisee, and other material terms of the agreement.

(5)  Disclose the franchisor's obligation to protect the patent, patent application, or copyright; and to defend the franchisee against claims arising from the franchisee's use of patented or copyrighted items, including:

    (i)  Whether the franchisor's obligation is contingent upon the franchisee notifying the franchisor of any infringement claims or whether the franchisee's notification is discretionary.

    (ii)  Whether the franchise agreement requires the franchisor to take affirmative action when notified of infringement.

    (iii)  Who has the right to control any litigation.

    (iv)  Whether the franchisor must participate in the defense of a franchisee or indemnify the franchisee for expenses or damages in a proceeding involving a patent, patent application, or copyright licensed to the franchisee.

    (v)  Whether the franchisor's obligation is contingent upon the franchisee modifying or discontinuing the use of the subject matter covered by the patent or copyright.

    (vi)  The franchisee's rights under the franchise agreement if the franchisor requires the franchisee to modify or discontinue using the subject matter covered by the patent or copyright.

(6)  If the franchisor knows of any patent or copyright infringement that could materially affect the franchisee, disclose:

    (i)  The nature of the infringement.

    (ii)  The locations where the infringement is occurring.

    (iii)  The length of time of the infringement (to the extent known).

    (iv)  Any action taken or anticipated by the franchisor.

---

[9] If counsel consents, the franchisor may include a counsel's opinion or a summary of the opinion if the full opinion is attached.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 42 of 65    Page ID #:80

(7) If the franchisor claims proprietary rights in other confidential information or trade secrets, describe in general terms the proprietary information communicated to the franchisee and the terms for use by the franchisee. The franchisor need only describe the general nature of the proprietary information, such as whether a formula or recipe is considered to be a trade secret.

(o) *Item 15* : *Obligation to Participate in the Actual Operation of the Franchise Business.*

(1) Disclose the franchisee's obligation to participate personally in the direct operation of the franchisee's business and whether the franchisor recommends participation. Include obligations arising from any written agreement or from the franchisor's practice.

(2) If personal "on-premises" supervision is not required, disclose the following:

(i) If the franchisee is an individual, whether the franchisor recommends on-premises supervision by the franchisee.

(ii) Limits on whom the franchisee can hire as an on-premises supervisor.

(iii) Whether an on-premises supervisor must successfully complete the franchisor's training program.

(iv) If the franchisee is a business entity, the amount of equity interest, if any, that the on-premises supervisor must have in the franchisee's business.

(3) Disclose any restrictions that the franchisee must place on its manager (for example, maintain trade secrets, covenants not to compete).

(p) *Item 16* : *Restrictions on What the Franchisee May Sell.* Disclose any franchisor-imposed restrictions or conditions on the goods or services that the franchisee may sell or that limit access to customers, including:

(1) Any obligation on the franchisee to sell only goods or services approved by the franchisor.

(2) Any obligation on the franchisee to sell all goods or services authorized by the franchisor.

(3) Whether the franchisor has the right to change the types of authorized goods or services and whether there are limits on the franchisor's right to make changes.

(q) *Item 17* : *Renewal, Termination, Transfer, and Dispute Resolution.* Disclose, in the following tabular form, a table that cross-references each enumerated franchise relationship item with the applicable provision in the franchise or related agreement. Title the table "THE FRANCHISE RELATIONSHIP" in capital letters and bold type.

(1) Describe briefly each contractual provision. If a particular item is not applicable, state "Not Applicable."

(2) If the agreement is silent about one of the listed provisions, but the franchisor unilaterally offers to provide certain benefits or protections to franchisees as a matter of policy, use a footnote to describe the policy and state whether the policy is subject to change.

**16 CFR Part 436 (up to date as of 1/28/2026)**
Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 43 of 65   Page ID #:81
**Disclosure Requirements and Prohibitions Concerning Franchising**                    **16 CFR 436.5(q)(3)**

(3)  In the summary column for Item 17(c), state what the term "renewal" means for your franchise system, including, if applicable, a statement that franchisees may be asked to sign a contract with materially different terms and conditions than their original contract.

## ITEM 17 TABLE:
## THE FRANCHISE RELATIONSHIP

**[IN BOLD]** THIS TABLE LISTS CERTAIN IMPORTANT PROVISIONS OF THE FRANCHISE AND RELATED AGREEMENTS. YOU SHOULD READ THESE PROVISIONS IN THE AGREEMENTS ATTACHED TO THIS DISCLOSURE DOCUMENT.

| PROVISION | SECTION IN FRANCHISE OR OTHER AGREEMENT | SUMMARY |
|---|---|---|
| a. Length of the franchise term | | |
| b. Renewal or extension of the term | | |
| c. Requirements for franchisee to renew or extend | | |
| d. Termination by franchisee | | |
| e. Termination by franchisor without cause | | |
| f. Termination by franchisor with cause | | |
| g. "Cause" defined—curable defaults | | |
| h. "Cause" defined—non-curable defaults | | |
| i. Franchisee's obligations on termination/non-renewal | | |
| j. Assignment of contract by franchisor | | |
| k. "Transfer" by franchisee—defined | | |
| l. Franchisor approval of transfer by franchisee | | |
| m. Conditions for franchisor approval of transfer | | |
| n. Franchisor's right of first refusal to acquire franchisee's business | | |
| o. Franchisor's option to purchase franchisee's business | | |
| p. Death or disability of franchisee | | |
| q. Non-competition covenants during the term of the franchise | | |
| r. Non-competition covenants after the franchise is terminated or expires | | |
| s. Modification of the agreement | | |
| t. Integration/merger clause | | |
| u. Dispute resolution by arbitration or mediation | | |
| v. Choice of forum | | |

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 44 of 65   Page ID #:82

| Provision | Section in franchise or other agreement | Summary |
|---|---|---|
| w. Choice of law | | |

(r) *Item 18* : *Public Figures.* Disclose:

(1) Any compensation or other benefit given or promised to a public figure arising from either the use of the public figure in the franchise name or symbol, or the public figure's endorsement or recommendation of the franchise to prospective franchisees.

(2) The extent to which the public figure is involved in the management or control of the franchisor. Describe the public figure's position and duties in the franchisor's business structure.

(3) The public figure's total investment in the franchisor, including the amount the public figure contributed in services performed or to be performed. State the type of investment (for example, common stock, promissory note).

(4) For purposes of this section, a public figure means a person whose name or physical appearance is generally known to the public in the geographic area where the franchise will be located.

(s) *Item 19* : *Financial Performance Representations.*

(1) Begin by stating the following:

The FTC's Franchise Rule permits a franchisor to provide information about the actual or potential financial performance of its franchised and/or franchisor-owned outlets, if there is a reasonable basis for the information, and if the information is included in the disclosure document. Financial performance information that differs from that included in Item 19 may be given only if: (1) a franchisor provides the actual records of an existing outlet you are considering buying; or (2) a franchisor supplements the information provided in this Item 19, for example, by providing information about possible performance at a particular location or under particular circumstances.

(2) If a franchisor does not provide any financial performance representation in Item 19, also state:

We do not make any representations about a franchisee's future financial performance or the past financial performance of company-owned or franchised outlets. We also do not authorize our employees or representatives to make any such representations either orally or in writing. If you are purchasing an existing outlet, however, we may provide you with the actual records of that outlet. If you receive any other financial performance information or projections of your future income, you should report it to the franchisor's management by contacting [name, address, and telephone number], the Federal Trade Commission, and the appropriate state regulatory agencies.

(3) If the franchisor makes any financial performance representation to prospective franchisees, the franchisor must have a reasonable basis and written substantiation for the representation at the time the representation is made and must state the representation in the Item 19 disclosure. The franchisor must also disclose the following:

(i) Whether the representation is an historic financial performance representation about the franchise system's existing outlets, or a subset of those outlets, or is a forecast of the prospective franchisee's future financial performance.

(ii) If the representation relates to past performance of the franchise system's existing outlets, the material bases for the representation, including:

(A) Whether the representation relates to the performance of all of the franchise system's existing outlets or only to a subset of outlets that share a particular set of characteristics (for example, geographic location, type of location (such as free standing vs. shopping center), degree of competition, length of time the outlets have operated, services or goods sold, services supplied by the franchisor, and whether the outlets are franchised or franchisor-owned or operated).

(B) The dates when the reported level of financial performance was achieved.

(C) The total number of outlets that existed in the relevant period and, if different, the number of outlets that had the described characteristics.

(D) The number of outlets with the described characteristics whose actual financial performance data were used in arriving at the representation.

(E) Of those outlets whose data were used in arriving at the representation, the number and percent that actually attained or surpassed the stated results.

(F) Characteristics of the included outlets, such as those characteristics noted in paragraph (3)(ii)(A) of this section, that may differ materially from those of the outlet that may be offered to a prospective franchisee.

(iii) If the representation is a forecast of future financial performance, state the material bases and assumptions on which the projection is based. The material assumptions underlying a forecast include significant factors upon which a franchisee's future results are expected to depend. These factors include, for example, economic or market conditions that are basic to a franchisee's operation, and encompass matters affecting, among other things, a franchisee's sales, the cost of goods or services sold, and operating expenses.

(iv) A clear and conspicuous admonition that a new franchisee's individual financial results may differ from the result stated in the financial performance representation.

(v) A statement that written substantiation for the financial performance representation will be made available to the prospective franchisee upon reasonable request.

(4) If a franchisor wishes to disclose only the actual operating results for a specific outlet being offered for sale, it need not comply with this section, provided the information is given only to potential purchasers of that outlet.

(5) If a franchisor furnishes financial performance information according to this section, the franchisor may deliver to a prospective franchisee a supplemental financial performance representation about a particular location or variation, apart from the disclosure document. The supplemental representation must:

(i) Be in writing.

(ii)   Explain the departure from the financial performance representation in the disclosure document.

(iii)   Be prepared in accordance with the requirements of paragraph (s)(3)(i)-(iv) of this section.

(iv)   Be furnished to the prospective franchisee.

(t)   *Item 20* : *Outlets and Franchisee Information.*

(1)   Disclose, in the following tabular form, the total number of franchised and company-owned outlets for each of the franchisor's last three fiscal years. For purposes of this section, "outlet" includes outlets of a type substantially similar to that offered to the prospective franchisee. A sample Item 20(1) Table is attached as appendix B to this part.

### ITEM 20 TABLE NO. 1
### SYSTEMWIDE OUTLET SUMMARY
### FOR YEARS [ ] TO [ ]

| Column 1 Outlet Type | Column 2 Year | Column 3 Outlets at the Start of the Year | Column 4 Outlets at the End of the Year | Column 5 Net Change |
|---|---|---|---|---|
| Franchised | 2004 | | | |
| | 2005 | | | |
| | 2006 | | | |
| Company-Owned | 2004 | | | |
| | 2005 | | | |
| | 2006 | | | |
| Total Outlets | 2004 | | | |
| | 2005 | | | |
| | 2006 | | | |

(i)   In column 1, include three outlet categories titled "franchised," "company-owned, and "total outlets."

(ii)   In column 2, state the last three fiscal years.

(iii)   In column 3, state the total number of each type of outlet operating at the beginning of each fiscal year.

(iv)   In column 4, state the total number of each type of outlet operating at the end of each fiscal year.

(v)   In column 5, state the net change, and indicate whether the change is positive or negative, for each type of outlet during each fiscal year.

(2) Disclose, in the following tabular form, the number of franchised and company-owned outlets and changes in the number and ownership of outlets located in each state during each of the last three fiscal years. Except as noted, each change in ownership shall be reported only once in the following tables. If multiple events occurred in the process of transferring ownership of an outlet, report the event that occurred last in time. If a single outlet changed ownership two or more times during the same fiscal year, use footnotes to describe the types of changes involved and the order in which the changes occurred.

(i) Disclose, in the following tabular form, the total number of franchised outlets transferred in each state during each of the franchisor's last three fiscal years. For purposes of this section, "transfer" means the acquisition of a controlling interest in a franchised outlet, during its term, by a person other than the franchisor or an affiliate. A sample Item 20(2) Table is attached as appendix C to this part.

## ITEM 20 TABLE NO. 2
### TRANSFERS OF OUTLETS FROM FRANCHISEES TO NEW OWNERS (OTHER THAN THE FRANCHISOR)
### FOR YEARS [ ] TO [ ]

| Column 1<br>State | Column 2<br>Year | Column 3<br>Number of Transfers |
|---|---|---|
| | 2004 | |
| | 2005 | |
| | 2006 | |
| | 2004 | |
| | 2005 | |
| | 2006 | |
| Total | 2004 | |
| | 2005 | |
| | 2006 | |

(A) In column 1, list each state with one or more franchised outlets.

(B) In column 2, state the last three fiscal years.

(C) In column 3, state the total number of completed transfers in each state during each fiscal year.

(ii) Disclose, in the following tabular form, the status of franchisee-owned outlets located in each state for each of the franchisor's last three fiscal years. A sample Item 20(3) Table is attached as appendix D to this part.

## ITEM 20 TABLE NO. 3
### STATUS OF FRANCHISED OUTLETS
### FOR YEARS [ ] TO [ ]

| Column 1 State | Column 2 Year | Column 3 Outlets at Start of Year | Column 4 Outlets Opened | Column 5 Terminations | Column 6 Non-Renewals | Column 7 Reacquired by Franchisor | Column 8 Ceased Operations-Other Reasons | Column 9 Outlets at End of the Year |
|---|---|---|---|---|---|---|---|---|
| | 2004 | | | | | | | |
| | 2005 | | | | | | | |
| | 2006 | | | | | | | |
| | 2004 | | | | | | | |
| | 2005 | | | | | | | |
| | 2006 | | | | | | | |
| Totals | 2004 | | | | | | | |
| | 2005 | | | | | | | |
| | 2006 | | | | | | | |

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 49 of 65   Page ID #:87

(A) In column 1, list each state with one or more franchised outlets.

(B) In column 2, state the last three fiscal years.

(C) In column 3, state the total number of franchised outlets in each state at the start of each fiscal year.

(D) In column 4, state the total number of franchised outlets opened in each state during each fiscal year. Include both new outlets and existing company-owned outlets that a franchisee purchased from the franchisor. (Also report the number of existing company-owned outlets that are sold to a franchisee in Column 7 of Table 4).

(E) In column 5, state the total number of franchised outlets that were terminated in each state during each fiscal year. For purposes of this section, "termination" means the franchisor's termination of a franchise agreement prior to the end of its term and without providing any consideration to the franchisee (whether by payment or forgiveness or assumption of debt).

(F) In column 6, state the total number of non-renewals in each state during each fiscal year. For purposes of this section, "non-renewal" occurs when the franchise agreement for a franchised outlet is not renewed at the end of its term.

(G) In column 7, state the total number of franchised outlets reacquired by the franchisor in each state during each fiscal year. For purposes of this section, a "reacquisition" means the franchisor's acquisition for consideration (whether by payment or forgiveness or assumption of debt) of a franchised outlet during its term. (Also report franchised outlets reacquired by the franchisor in column 5 of Table 4).

(H) In column 8, state the total number of outlets in each state not operating as one of the franchisor's outlets at the end of each fiscal year for reasons other than termination, non-renewal, or reacquisition by the franchisor.

(I) In column 9, state the total number of franchised outlets in each state at the end of the fiscal year.

(iii) Disclose, in the following tabular form, the status of company-owned outlets located in each state for each of the franchisor's last three fiscal years. A sample Item 20(4) Table is attached as appendix E to this part.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 50 of 65   Page ID #:88

### ITEM 20 TABLE NO. 4
#### STATUS OF COMPANY-OWNED OUTLETS
#### FOR YEARS [ ] TO [ ]

| Column 1 State | Column 2 Year | Column 3 Outlets at Start of Year | Column 4 Outlets Opened | Column 5 Outlets Reacquired From Franchisee | Column 6 Outlets Closed | Column 7 Outlets Sold to Franchisee | Column 8 Outlets at End of the Year |
|---|---|---|---|---|---|---|---|
| | 2004 | | | | | | |
| | 2005 | | | | | | |
| | 2006 | | | | | | |
| | 2004 | | | | | | |
| | 2005 | | | | | | |
| | 2006 | | | | | | |
| Totals | 2004 | | | | | | |
| | 2005 | | | | | | |
| | 2006 | | | | | | |

(A) In column 1, list each state with one or more company-owned outlets.

(B) In column 2, state the last three fiscal years.

(C) In column 3, state the total number of company-owned outlets in each state at the start of the fiscal year.

(D) In column 4, state the total number of company-owned outlets opened in each state during each fiscal year.

(E) In column 5, state the total number of franchised outlets reacquired from franchisees in each state during each fiscal year.

(F) In column 6, state the total number of company-owned outlets closed in each state during each fiscal year. Include both actual closures and instances when an outlet ceases to operate under the franchisor's trademark.

(G) In column 7, state the total number of company-owned outlets sold to franchisees in each state during each fiscal year.

(H) In column 8, state the total number of company-owned outlets operating in each state at the end of each fiscal year.

(3) Disclose, in the following tabular form, projected new franchised and company-owned outlets. A sample Item 20(5) Table is attached as appendix F to this part.

## ITEM 20 TABLE NO. 5
### PROJECTED OPENINGS AS OF [LAST DAY OF LAST FISCAL YEAR]

| Column 1 State | Column 2 Franchise Agreements Signed But Outlet Not Opened | Column 3 Projected New Franchised Outlet In The Next Fiscal Year | Column 4 Projected New Company-Owned Outlet In the Next Fiscal Year |
|---|---|---|---|
| Total | | | |

(i) In column 1, list each state where one or more franchised or company-owned outlets are located or are projected to be located.

(ii) In column 2, state the total number of franchise agreements that had been signed for new outlets to be located in each state as of the end of the previous fiscal year where the outlet had not yet opened.

(iii) In column 3, state the total number of new franchised outlets in each state projected to be opened during the next fiscal year.

(iv) In column 4, state the total number of new company-owned outlets in each state that are projected to be opened during the next fiscal year.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 52 of 65   Page ID #:90

(4) Disclose the names of all current franchisees and the address and telephone number of each of their outlets. Alternatively, disclose this information for all franchised outlets in the state, but if these franchised outlets total fewer than 100, disclose this information for franchised outlets from contiguous states and then the next closest states until at least 100 franchised outlets are listed.

(5) Disclose the name, city and state, and current business telephone number, or if unknown, the last known home telephone number of every franchisee who had an outlet terminated, canceled, not renewed, or otherwise voluntarily or involuntarily ceased to do business under the franchise agreement during the most recently completed fiscal year or who has not communicated with the franchisor within 10 weeks of the disclosure document issuance date.[10] State in immediate conjunction with this information: "If you buy this franchise, your contact information may be disclosed to other buyers when you leave the franchise system."

(6) If a franchisor is selling a previously-owned franchised outlet now under its control, disclose the following additional information for that outlet for the last five fiscal years. This information may be attached as an addendum to a disclosure document, or, if disclosure has already been made, then in a supplement to the previously furnished disclosure document.

   (i) The name, city and state, current business telephone number, or if unknown, last known home telephone number of each previous owner of the outlet;

   (ii) The time period when each previous owner controlled the outlet;

   (iii) The reason for each previous change in ownership (for example, termination, non-renewal, voluntary transfer, ceased operations); and

   (iv) The time period(s) when the franchisor retained control of the outlet (for example, after termination, non-renewal, or reacquisition).

(7) Disclose whether franchisees signed confidentiality clauses during the last three fiscal years. If so, state the following: "In some instances, current and former franchisees sign provisions restricting their ability to speak openly about their experience with [name of franchise system]. You may wish to speak with current and former franchisees, but be aware that not all such franchisees will be able to communicate with you." Franchisors may also disclose the number and percentage of current and former franchisees who during each of the last three fiscal years signed agreements that include confidentiality clauses and may disclose the circumstances under which such clauses were signed.

(8) Disclose, to the extent known, the name, address, telephone number, email address, and Web address (to the extent known) of each trademark-specific franchisee organization associated with the franchise system being offered, if such organization:

   (i) Has been created, sponsored, or endorsed by the franchisor. If so, state the relationship between the organization and the franchisor (for example, the organization was created by the franchisor, sponsored by the franchisor, or endorsed by the franchisor).

   (ii) Is incorporated or otherwise organized under state law and asks the franchisor to be included in the franchisor's disclosure document during the next fiscal year. Such organizations must renew their request on an annual basis by submitting a request no later than 60 days after the

---

[10] Franchisors may substitute alternative contact information at the request of the former franchisee, such as a home address, post office address, or a personal or business email address.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 53 of 65   Page ID #:91

close of the franchisor's fiscal year. The franchisor has no obligation to verify the organization's continued existence at the end of each fiscal year. Franchisors may also include the following statement: "The following independent franchisee organizations have asked to be included in this disclosure document."

(u)   *Item 21* : *Financial Statements.*

(1)   Include the following financial statements prepared according to United States generally accepted accounting principles, as revised by any future United States government mandated accounting principles, or as permitted by the Securities and Exchange Commission. Except as provided in paragraph (u)(2) of this section, these financial statements must be audited by an independent certified public accountant using generally accepted United States auditing standards. Present the required financial statements in a tabular form that compares at least two fiscal years.

   (i)   The franchisor's balance sheet for the previous two fiscal year-ends before the disclosure document issuance date.

   (ii)   Statements of operations, stockholders equity, and cash flows for each of the franchisor's previous three fiscal years.

   (iii)   Instead of the financial disclosures required by paragraphs (u)(1)(i) and (ii) of this section, the franchisor may include financial statements of any of its affiliates if the affiliate's financial statements satisfy paragraphs (u)(1)(i) and (ii) of this section and the affiliate absolutely and unconditionally guarantees to assume the duties and obligations of the franchisor under the franchise agreement. The affiliate's guarantee must cover all of the franchisor's obligations to the franchisee, but need not extend to third parties. If this alternative is used, attach a copy of the guarantee to the disclosure document.

   (iv)   When a franchisor owns a direct or beneficial controlling financial interest in a subsidiary, its financial statements should reflect the financial condition of the franchisor and its subsidiary.

   (v)   Include separate financial statements for the franchisor and any subfranchisor, as well as for any parent that commits to perform post-sale obligations for the franchisor or guarantees the franchisor's obligations. Attach a copy of any guarantee to the disclosure document.

(2)   A start-up franchise system that does not yet have audited financial statements may phase-in the use of audited financial statements by providing, at a minimum, the following statements at the indicated times:

| | |
|---|---|
| (i) The franchisor' first partial or full fiscal year selling franchises. | An unaudited opening balance sheet. |
| (ii) The franchisor' second fiscal year selling franchises. | Audited balance sheet opinion as of the end of the first partial or full fiscal year selling franchises. |
| (iii) The franchisor' third and subsequent fiscal | All required financial statements for the previous fiscal year, plus any previously disclosed audited statements that still must be disclosed |

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 54 of 65   Page ID #:92

| years selling franchises. | according to paragraphs (u)(1)(i) and (ii) of this section. |
|---|---|

(iv) Start-up franchisors may phase-in the disclosure of audited financial statements, provided the franchisor:

  (A) Prepares audited financial statements as soon as practicable.

  (B) Prepares unaudited statements in a format that conforms as closely as possible to audited statements.

  (C) Includes one or more years of unaudited financial statements or clearly and conspicuously discloses in this section that the franchisor has not been in business for three years or more, and cannot include all financial statements required in paragraphs (u)(1)(i) and (ii) of this section.

(v) *Item 22* : *Contracts.* Attach a copy of all proposed agreements regarding the franchise offering, including the franchise agreement and any lease, options, and purchase agreements.

(w) *Item 23* : *Receipts.* Include two copies of the following detachable acknowledgment of receipt in the following form as the last pages of the disclosure document:

(1) State the following:

RECEIPT

This disclosure document summarizes certain provisions of the franchise agreement and other information in plain language. Read this disclosure document and all agreements carefully.

If [name of franchisor] offers you a franchise, it must provide this disclosure document to you 14 calendar-days before you sign a binding agreement with, or make a payment to, the franchisor or an affiliate in connection with the proposed franchise sale.

If [name of franchisor] does not deliver this disclosure document on time or if it contains a false or misleading statement, or a material omission, a violation of federal law and state law may have occurred and should be reported to the Federal Trade Commission, Washington, D.C. 20580 and [state agency].

(2) Disclose the name, principal business address, and telephone number of each franchise seller offering the franchise.

(3) State the issuance date.

(4) If not disclosed in paragraph (a) of this section, state the name and address of the franchisor's registered agent authorized to receive service of process.

(5) State the following:

I received a disclosure document dated _____ that included the following Exhibits:

(6) List the title(s) of all attached Exhibits.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 55 of 65   Page ID #:93

(7)   Provide space for the prospective franchisee's signature and date.

(8)   Franchisors may include any specific instructions for returning the receipt (for example, street address, email address, facsimile telephone number).

## Subpart D—Instructions

## § 436.6 Instructions for preparing disclosure documents.

(a)   It is an unfair or deceptive act or practice in violation of Section 5 of the FTC Act for any franchisor to fail to include the information and follow the instructions for preparing disclosure documents set forth in subpart C (basic disclosure requirements) and subpart D (updating requirements) of part 436. The Commission will enforce this provision according to the standards of liability under Sections 5, 13(b), and 19 of the FTC Act.

(b)   Disclose all required information clearly, legibly, and concisely in a single document using plain English. The disclosures must be in a form that permits each prospective franchisee to store, download, print, or otherwise maintain the document for future reference.

(c)   Respond fully to each disclosure Item. If a disclosure Item is not applicable, respond negatively, including a reference to the type of information required to be disclosed by the Item. Precede each disclosure Item with the appropriate heading.

(d)   Do not include any materials or information other than those required or permitted by part 436 or by state law not preempted by part 436. For the sole purpose of enhancing the prospective franchisee's ability to maneuver through an electronic version of a disclosure document, the franchisor may include scroll bars, internal links, and search features. All other features (e.g., multimedia tools such as audio, video, animation, pop-up screens, or links to external information) are prohibited.

(e)   Franchisors may prepare multi-state disclosure documents by including non-preempted, state-specific information in the text of the disclosure document or in Exhibits attached to the disclosure document.

(f)   Subfranchisors shall disclose the required information about the franchisor, and, to the extent applicable, the same information concerning the subfranchisor.

(g)   Before furnishing a disclosure document, the franchisor shall advise the prospective franchisee of the formats in which the disclosure document is made available, any prerequisites for obtaining the disclosure document in a particular format, and any conditions necessary for reviewing the disclosure document in a particular format.

(h)   Franchisors shall retain, and make available to the Commission upon request, a sample copy of each materially different version of their disclosure documents for three years after the close of the fiscal year when it was last used.

(i)   For each completed franchise sale, franchisors shall retain a copy of the signed receipt for at least three years.

## § 436.7 Instructions for updating disclosures.

(a)   All information in the disclosure document shall be current as of the close of the franchisor's most recent fiscal year. After the close of the fiscal year, the franchisor shall, within 120 days, prepare a revised disclosure document, after which a franchise seller may distribute only the revised document and no other disclosure document.

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 56 of 65   Page ID #:94

(b) The franchisor shall, within a reasonable time after the close of each quarter of the fiscal year, prepare revisions to be attached to the disclosure document to reflect any material change to the disclosures included, or required to be included, in the disclosure document. Each prospective franchisee shall receive the disclosure document and the quarterly revisions for the most recent period available at the time of disclosure.

(c) If applicable, the annual update shall include the franchisor's first quarterly update, either by incorporating the quarterly update information into the disclosure document itself, or through an addendum.

(d) When furnishing a disclosure document, the franchise seller shall notify the prospective franchisee of any material changes that the seller knows or should have known occurred in the information contained in any financial performance representation made in Item 19 (section 436.5(s)).

(e) Information that must be audited pursuant to § 436.5(u) of this part need not be audited for quarterly revisions; provided, however, that the franchisor states in immediate conjunction with the information that such information was not audited.

## Subpart E—Exemptions

## § 436.8 Exemptions.

(a) The provisions of part 436 shall not apply if the franchisor can establish any of the following:

(1) The total of the required payments, or commitments to make a required payment, to the franchisor or an affiliate that are made any time from before to within six months after commencing operation of the franchisee's business is less than $735.

(2) The franchise relationship is a fractional franchise.

(3) The franchise relationship is a leased department.

(4) The franchise relationship is covered by the Petroleum Marketing Practices Act, 15 U.S.C. 2801.

(5)

(i) The franchisee's initial investment, excluding any financing received from the franchisor or an affiliate and excluding the cost of unimproved land, totals at least $1,469,600 and the prospective franchisee signs an acknowledgment verifying the grounds for the exemption. The acknowledgment shall state: "The franchise sale is for more than $1,469,600—excluding the cost of unimproved land and any financing received from the franchisor or an affiliate— and thus is exempted from the Federal Trade Commission's Franchise Rule disclosure requirements, pursuant to 16 CFR 436.8(a)(5)(i)";[11] or

(ii) The franchisee (or its parent or any affiliates) is an entity that has been in business for at least five years and has a net worth of at least $7,348,000.

---

[11] The large franchise exemption applies only if at least one individual prospective franchisee in an investor-group qualifies for the exemption by investing at the threshold level stated in this section.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 57 of 65    Page ID #:95

(6) One or more purchasers of at least a 50% ownership interest in the franchise: within 60 days of the sale, has been, for at least two years, an officer, director, general partner, individual with management responsibility for the offer and sale of the franchisor's franchises or the administrator of the franchised network; or within 60 days of the sale, has been, for at least two years, an owner of at least a 25% interest in the franchisor.

(7) There is no written document that describes any material term or aspect of the relationship or arrangement.

(b) For purposes of the exemptions set forth in this section, the Commission shall adjust the size of the monetary thresholds every fourth year based upon the Consumer Price Index. For purposes of this section, "Consumer Price Index" means the Consumer Price Index for all urban consumers published by the Department of Labor.

[72 FR 15544, Mar. 30, 2007, as amended at 77 FR 36150, June 18, 2012; 81 FR 31501, May 19, 2016; 85 FR 38791, June 29, 2020; 89 FR 57078, July 12, 2024]

## Subpart F—Prohibitions

## § 436.9 Additional prohibitions.

It is an unfair or deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act for any franchise seller covered by part 436 to:

(a) Make any claim or representation, orally, visually, or in writing, that contradicts the information required to be disclosed by this part.

(b) Misrepresent that any person:

(1) Purchased a franchise from the franchisor or operated a franchise of the type offered by the franchisor.

(2) Can provide an independent and reliable report about the franchise or the experiences of any current or former franchisees.

(c) Disseminate any financial performance representations to prospective franchisees unless the franchisor has a reasonable basis and written substantiation for the representation at the time the representation is made, and the representation is included in Item 19 (§ 436.5(s)) of the franchisor's disclosure document. In conjunction with any such financial performance representation, the franchise seller shall also:

(1) Disclose the information required by §§ 436.5(s)(3)(ii)(B) and (E) of this part if the representation relates to the past performance of the franchisor's outlets.

(2) Include a clear and conspicuous admonition that a new franchisee's individual financial results may differ from the result stated in the financial performance representation.

(d) Fail to make available to prospective franchisees, and to the Commission upon reasonable request, written substantiation for any financial performance representations made in Item 19 (§ 436.5(s)).

(e) Fail to furnish a copy of the franchisor's disclosure document to a prospective franchisee earlier in the sales process than required under § 436.2 of this part, upon reasonable request.

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 58 of 65    Page ID #:96

(f)  Fail to furnish a copy of the franchisor's most recent disclosure document and any quarterly updates to a prospective franchisee, upon reasonable request, before the prospective franchisee signs a franchise agreement.

(g)  Present for signing a franchise agreement in which the terms and conditions differ materially from those presented as an attachment to the disclosure document, unless the franchise seller informed the prospective franchisee of the differences at least seven days before execution of the franchise agreement.

(h)  Disclaim or require a prospective franchisee to waive reliance on any representation made in the disclosure document or in its exhibits or amendments. Provided, however, that this provision is not intended to prevent a prospective franchisee from voluntarily waiving specific contract terms and conditions set forth in his or her disclosure document during the course of franchise sale negotiations.

(i)  Fail to return any funds or deposits in accordance with any conditions disclosed in the franchisor's disclosure document, franchise agreement, or any related document.

## Subpart G—Other Provisions

## § 436.10 Other laws and rules.

(a)  The Commission does not approve or express any opinion on the legality of any matter a franchisor may be required to disclose by part 436. Further, franchisors may have additional obligations to impart material information to prospective franchisees outside of the disclosure document under Section 5 of the Federal Trade Commission Act. The Commission intends to enforce all applicable statutes and rules.

(b)  The FTC does not intend to preempt the franchise practices laws of any state or local government, except to the extent of any inconsistency with part 436. A law is not inconsistent with part 436 if it affords prospective franchisees equal or greater protection, such as registration of disclosure documents or more extensive disclosures.

## § 436.11 Severability.

If any provision of this part is stayed or held invalid, the remainder will stay in force.

## Appendix A to Part 436—Sample Item 10 Table—Summary of Financing Offered

## SUMMARY OF FINANCING OFFERED

| Item Financed | Source of Financing | Down Payment | Amount Financed | Term (Yrs) | Interest Rate | Monthly Payment | Prepay Penalty | Security Required | Liability Upon Default | Loss of Legal Right on Default |
|---|---|---|---|---|---|---|---|---|---|---|
| Initial Fee | | | | | | | | | | |
| Land/Constr | | | | | | | | | | |
| Leased Space | | | | | | | | | | |
| Equip. Lease | | | | | | | | | | |
| Equip. Purchase | | | | | | | | | | |
| Opening Inventory | | | | | | | | | | |
| Other Financing | | | | | | | | | | |

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 60 of 65   Page ID #:98

## Appendix B to Part 436—Sample Item 20(1) Table—Systemwide Outlet Summary

### SYSTEMWIDE OUTLET SUMMARY
### FOR YEARS 2004 TO 2006

| Column 1 Outlet Type | Column 2 Year | Column 3 Outlets at the Start of the Year | Column 4 Outlets at the End of the Year | Column 5 Net Change |
|---|---|---|---|---|
| Franchised | 2004 | 859 | 1,062 | + 203 |
| | 2005 | 1,062 | 1,296 | + 234 |
| | 2006 | 1,296 | 2,720 | + 1,424 |
| Company Owned | 2004 | 125 | 145 | + 20 |
| | 2005 | 145 | 76 | -69 |
| | 2006 | 76 | 141 | + 65 |
| Total Outlets | 2004 | 984 | 1,207 | + 223 |
| | 2005 | 1,207 | 1,372 | + 165 |
| | 2006 | 1,372 | 2,861 | + 1,489 |

## Appendix C to Part 436—Sample Item 20(2) Table—Transfers of Franchised Outlets

### TRANSFERS OF FRANCHISED OUTLETS FROM FRANCHISEES TO NEW OWNERS (OTHER THAN THE FRANCHISOR)
### FOR YEARS 2004 TO 2006

| Column 1 State | Column 2 Year | Column 3 Number of Transfers |
|---|---|---|
| NC | 2004 | 1 |
| | 2005 | 0 |
| | 2006 | 2 |
| SC | 2004 | 0 |
| | 2005 | 0 |
| | 2006 | 2 |
| Total | 2004 | 1 |
| | 2005 | 0 |

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 61 of 65    Page ID #:99

| Column 1 | Column 2 | Column 3 |
|----------|----------|---------------------|
| **State** | **Year** | **Number of Transfers** |
| | 2006 | 4 |

## Appendix D to Part 436—Sample Item 20(3) Table—Status of Franchise Outlets

STATUS OF FRANCHISE OUTLETS
FOR YEARS 2004 TO 2006

| Column 1 State | Column 2 Year | Column 3 Outlets at Start of Year | Column 4 Outlets Opened | Column 5 Terminations | Column 6 Non-Renewals | Column 7 Reacquired by Franchisor | Column 8 Ceased Operations-Other Reasons | Column 9 Outlets at End of the Year |
|---|---|---|---|---|---|---|---|---|
| AL | 2004 | 10 | 2 | 1 | 0 | 0 | 1 | 10 |
| | 2005 | 11 | 5 | 0 | 1 | 0 | 0 | 15 |
| | 2006 | 15 | 4 | 1 | 0 | 1 | 2 | 15 |
| AZ | 2004 | 20 | 5 | 0 | 0 | 0 | 0 | 25 |
| | 2005 | 25 | 4 | 1 | 0 | 0 | 2 | 26 |
| | 2006 | 26 | 4 | 0 | 0 | 0 | 0 | 30 |
| Totals | 2004 | 30 | 7 | 1 | 0 | 0 | 1 | 35 |
| | 2005 | 36 | 9 | 1 | 1 | 0 | 2 | 41 |
| | 2006 | 41 | 8 | 1 | 0 | 1 | 2 | 45 |

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 63 of 65    Page ID #:101

**Appendix E to Part 436—Sample Item 20(4) Table—Status of Company-Owned Outlets**

Case 8:26-cv-00610   Document 3   Filed 03/18/26   Page 64 of 65   Page ID #:102

STATUS OF COMPANY-OWNED OUTLETS

FOR YEARS 2004 TO 2006

| Column 1 State | Column 2 Year | Column 3 Outlets at Start of Year | Column 4 Outlets Opened | Column 5 Outlets Reacquired From Franchisees | Column 6 Outlets Closed | Column 7 Outlets Sold to Franchisees | Column 8 Outlets at End of the Year |
|---|---|---|---|---|---|---|---|
| NY | 2004 | 1 | 0 | 1 | 0 | 0 | 2 |
| | 2005 | 2 | 2 | 0 | 1 | 0 | 3 |
| | 2006 | 3 | 0 | 0 | 3 | 0 | 0 |
| OR | 2004 | 4 | 0 | 1 | 0 | 0 | 5 |
| | 2005 | 5 | 0 | 0 | 2 | 0 | 3 |
| | 2006 | 3 | 0 | 0 | 0 | 1 | 2 |
| Totals | 2004 | 5 | 0 | 2 | 0 | 0 | 7 |
| | 2005 | 7 | 2 | 0 | 3 | 0 | 6 |
| | 2006 | 6 | 0 | 0 | 3 | 1 | 2 |

Case 8:26-cv-00610    Document 3    Filed 03/18/26    Page 65 of 65   Page ID #:103

## Appendix F to Part 436—Sample Item 20(5) Table—Projected New Franchised Outlets

PROJECTED NEW FRANCHISED OUTLETS
AS OF DECEMBER 31, 2006

| Column 1 State | Column 2 Franchise Agreements Signed But Outlet Not Opened | Column 3 Projected New Franchised Outlets in the Next Fiscal Year | Column 4 Projected New Company-Owned Outlets in the Current Fiscal Year |
|---|---|---|---|
| CO | 2 | 3 | 1 |
| NM | 0 | 4 | 2 |
| Total | 2 | 7 | 3 |